MR. LEE. Thank you, Your Honor. May it please the Court, my name is Bill Lee, and together with my partner, Tom Zubler, we represent BAXTER. In finding Claims 26-31 of the 434 patent invalid, we submit the PTO error both procedurally and substantively. I'd like to focus my argument on three substantive points, but let me briefly address the issue of waiver before I get to those points. There was no waiver below, and the Board found no waiver. They actually found waiver on one issue at page 829, but it is an issue that is not relevant to the appeal. BAXTER raised the Donaldson question, the question of what is the correct analytical discipline for a §112 paragraph 6 claim in its opening brief, its reply brief, at the argument in the petition for remand. MR. LEE. Mr. Lee, I've got your brief before the Board, and I can't find anywhere in your opening brief or your reply brief any arguments at all about the failure of the references to disclose a means for delivering. And this is one of their waiver arguments, quite clearly. So while I see that you did dispute the examiner's conclusions regarding a means for controlling, the means for delivering do not appear, and there are no particular arguments directed to that at all. MR. GOLDSMITH. Your Honor, two answers to that. The first is that there is a portion of the brief that describes the means for delivering. MRS. FISCHER. Well, obviously you're prepared for this, so show me where. MR. GOLDSMITH. No, and it describes for the means of delivering both the functions and it describes the corresponding structure. So if you go to the means for delivering, I'll say there are two means for delivering limitations, I'd like you to address. MRS. FISCHER. Yes, in Part A, yes. So show me where in the brief. MR. GOLDSMITH. Your Honor, there are two answers to the question. MRS. FISCHER. Well, I need to know what page in the appendix. MR. GOLDSMITH. A7883, 10A. MRS. FISCHER. 10A, yes. MR. GOLDSMITH. Which identifies the function, identifies the corresponding structure. MRS. FISCHER. But there's no argument herein that suggests that the examiner did anything at all wrong in rejecting. MR. GOLDSMITH. Your Honor, that's the second part of the answer. MRS. FISCHER. Okay. MR. GOLDSMITH. And I think if you want to focus just on the opening brief and suggest that what we said in the opening brief would be. MRS. FISCHER. No, I want you to show me where in this appeal brief you complained that the examiner was wrong when he concluded that the handbook and Lichtenstein disclosed the means for delivering, because he made that conclusion quite clearly, identifying structure on page 9284 of the appendix in his rejection. And yet your brief to the Board does not raise the argument you now raise on appeal in any way, shape, or form. MR. GOLDSMITH. Your Honor, two answers to your question. I think the answer to your first question is this. Do we describe the function, the corresponding structure? Yes. Do we make the comparison to the structure that. MRS. FISCHER. Or do you even suggest that the examiner was wrong to conclude they're present in the prior article? MR. GOLDSMITH. In that particular situation, in that brief, no. And as. MRS. FISCHER. And how do you get to raise this on appeal, such as this brief? It's not the reply brief either. So how do you get to raise it on appeal? MR. GOLDSMITH. Well, Your Honor, here's the answer. If you raise the Donaldson issue in the opening brief and you describe it as a means plus functional limitation, if you raise it in the reply, then there is an intervening. And then you go to the argument. And if Your Honor considers the transcript, the argument on how Donaldson applies broadly. MRS. FISCHER. Even if you had raised this issue in the arguments, that's too late. You don't raise it in the brief or the word. MR. GOLDSMITH. Your Honor, the regulation. MRS. FISCHER. But you don't raise it in the arguments. You don't say anything particular about the means for delivering.  I don't see how that translates into the examiner failed to show where the prior art discloses this. MR. GOLDSMITH. Your Honor, if I could finish. Let me finish my last answer and then I think I can answer your next question, which is this. I don't think that the waiver issue is determined by freeze framing on the opening brief or the reply brief. There are a whole set of circumstances here that led to the petition for a remand. And the decision by the Chief Administrative Patent Judge after this Court's decision in proscenius. For sure, the opening briefs focused on issues such as is it obvious to have a touch screen on the hemodialysis machine. Those were live issues before this Court decided in 2009 and rendered its opinion. Both sets of issues were discussed. I think the way you have to look at the waiver issue is this. If you look at the complete set of proceedings before the patent office, I would start at page 858. And I think, Your Honor, starting at the beginning, I'm starting at the end. And to finish my answer to Your Honor's first question, basically the PTO's regulations say the arguments waived absent good cause. And there is no finding of waiver by the Board on this issue. MS. STEWART-STEINBERG. Why would the Board make a finding of waiver? You never raised the argument before then. You're only raising it for the first time thus on appeal. But you know what? I don't want to use up all your time on this because you've got a lot of important arguments. Why don't you move on? Because this is just one of your many arguments. CHIEF JUSTICE ROBERTS. Yes. And let me just add a final thought to that, though. Because the PTO does describe this as newly minted, raising it as the first time on appeal. We would respectfully disagree. And that's not the correct characterization. Here is what the Chief Administrative Patent Judge said. Whether the examiner applied the Donaldson and Fresenius test in rejecting the means plus function claims common to Fresenius and the reexamination proceeding, and then specifically says claims 26 through 31, is disputed by the patent owner and is an issue to be resolved by the Board. So in the face of that, which is the end rather than the beginning, that was an opportunity to say it's waived. It's not in the opening brief. It's not in the reply brief. This is a recognition that there's an intervening decision by this Court. That intervening decision focuses us on a specific set of claims. And he said this is an issue to be resolved. And the answer, Your Honor, is it doesn't get resolved. And there are both procedural problems with what the PTO did and there are substance problems. The Donaldson requirements, as articulated and confirmed in Fresenius, exist both for procedural reasons and for substantive reasons. And I can give you two examples relevant to this appeal of just why not following the procedural discipline creates problems. So if I look at the limitation Your Honor focused on initially, the means for delivering dialysate, on this record, after the Chief Administrative Patent Law Judge entered his order, neither the examiner nor the Board ever identified the corresponding structure in the specification, never identified the corresponding structure in the prior art, never made a comparison. That's a procedural failure to follow Donaldson, but had really severe consequences here. And the PTO's brief tells us what the consequences were. Because the examiner never identified the corresponding structure, because there never was a comparison, what does the PTO say to you today? It says here is the structure. Have in mind that the limitation is means for delivering dialysate. And their structure is an ultrafiltration pump. That's what they identify with the little pink circle in the graphic in their brief. The ultrafiltration pump doesn't deliver dialysate to anything. The ultrafiltration pump removes liquid after you've gone through the dialysis process. The patent specifically tells us this. And the best indication is the structure that should have been the subject of the comparison for this limitation, means for delivering dialysis, is actually the flow equalizer and a set of other very complicated structures that are described in columns one and two. When you get to ultrafiltration removal, which is after the process, it's described in column seven in item 74. So the problem with not following the discipline is that you end up getting to a point before this court where the PTO is saying, well, here's another structure. And this structure, by definition, cannot even perform the function that is described. Means for delivering dialysis is not performed by an ultrafiltration pump, which by definition is after you've gone through the dialysis process and you're removing liquid. So it's a procedural failure on that limitation. But you didn't raise this before the board. I'm sorry to harp on it, but the examiner identified the ultrafiltration pump and pump lines, which is 9284, and then you didn't raise before the board that that isn't equivalent to the structure disclosed in the specification form. Your Honor, the petition for remand is precisely the issue we raised, to say that the examiner had not gone through that discipline. And the examiner... No, you said the examiner hasn't identified the thing in the spec that corresponds to it. Yeah. But what the examiner did do is tell you exactly what was disclosed in the prior art, which the PTO argues is the exact same thing. Respectfully, Your Honor, I think that that is a characterization that's not reflected by the record. The examiner said pump and pump lines. There are a whole bunch of pumps and pump lines in this system. The comparison of the ultrafiltration pump, which is one of many pumps, to this specific function of delivering the dialysis is an argument the solicitor is making for you today. There is no structural comparison by the examiner between the ultrafiltration pump and the flow equalizers of this invention. Your Honor, this is a situation where, because of the means plus function limitations, the structure of the invention has a very specific nature, character, and definition. It includes, for instance, on the means for delivering dialysis, a whole structure that includes these flow equalizers, these different pumps, not the ultrafiltration pump. Just saying that there are pumps out there or there are pumps in the prior art, sure there are pumps, Your Honor, but this Court recognized that in its last opinion. There are pumps. There are motors. The question is what is the disclosed structure? What is the corresponding structure? What's the comparison? And I guess, Your Honor, to be redundant, I think the answer to your question, the best answer I have to your question is the Chief Administrative Patent Judge said, in response to our petition for remand, consider this issue. And the issue is not considered, and that's why you're left at this point to try to figure out whether an ultrafiltration pump which removes liquid could possibly be something that's delivering dialysis. It can, and that's the problem with not following the Donaldson regime. Now, without the petition for remand, without the Chief Administrative Patent Judge, in his opinion, would we be in a different position for sure? But the waiver issue has to be looked, I think, at the record in total and has to be at least educated to some degree by the fact that the Board never found these waivers. Now, a second example of the problem with not following the Donaldson regime is Claim 30, the means for delivering an anticoagulant. And this is the same issue. It's the issue of not having followed Fresenius or Donaldson. It's not having identified the structure in the patent and then not making the comparison. Now, here, this Court has identified the structure, and that's a claim interpretation issue. It's not a factual issue. It includes a microprocessor plus a stepper motor. Neither the examiner nor the Board identified a stepper motor. So consider what the solicitor's response is to you today. It is that a stepper motor is inherent in any of these devices. Well, two responses. If that was true, then this Court got it wrong in 2009 because it would have been inherent then. It's not. And the second is there is no stepper motor disclosed for this function. The examiner didn't identify any. The Board didn't identify anybody. And certainly on this waiver issue, if you have a decision of this Court that says the correct claim interpretation of a limitation is requires a comparison to a disclosed stepper motor, the Chief Administrative Patent Judge says consider that issue, and then the Board doesn't identify a stepper motor, and the Patent Office comes to you and says there's one inherent. That is not sufficient as a matter of their proof, and it certainly creates problems of conflict between the two records. I'm struggling to follow your argument on the stepper motor, so let me just see if I get it. Are you saying that the stepper motor is not adequately disclosed by the prior art references, or it's not at all the structure disclosed for performing the means? I thought everyone was in agreement that the structure disclosed was the microprocessor and a concentrate pump. That's for the means for controlling, Your Honor. I'm sorry, I thought you had moved on to that. We're still on the delivery. I'm going to finish on the means for delivering in order to save my remaining minute. That's 55 seconds left. Take whatever time you need within limits. I want to see what happens. A very quick answer. Your Honor, on the means for delivering anticoagulant, the disclosed structure requires a stepper motor, as this Court held. That's what the specific claim interpretation was. The Chief Administrative Patent Law says consider it. It's not. The examiner didn't identify a stepper motor. The board didn't identify a stepper motor. And what does the solicitor say? The solicitor says a stepper motor is inherent. There is no record support for it being inherent. It's inconsistent with this Court's decision. In fact, it's important to remember this was an invention made back in 1991. There are only two systems on the record that have a stepper motor with all these limitations. Ours and Fresenius and no other. And I reserve whatever time I have left. We'll save your rebuttal time, Mr. Lee. Mr. Joseph. May it please the Court. I think that it's important that we actually started the oral argument with the waiver point, which opposing counsel has characterized as being not significant. It really does touch on all of their means plus function arguments, which they placed in their blue brief. I'd like to take a moment to just clarify what our position is with respect to waiver. In Claim 30, there's a means for delivering an anticoagulant. Nowhere in their brief to the board did they argue that. In Claim 26, there's a means for delivering a dialysate. Again, nowhere in their brief to the board did they argue that particular limitation. And with respect to the means for controlling dialysate, the examiner relied upon two different references. It relied upon the CMS-08, and it also relied upon the Lichtenstein. Nowhere in their brief to the board did they argue that particular limitation with respect to Lichtenstein. We acknowledge that they did argue that limitation with respect to the CMS-08, but they waived all of their arguments, which they currently make in their blue brief, with respect to Lichtenstein. As this Court pointed out... Mr. Johnson, how do you deal with the fact that this Court has already held this patent to be not invalid over essentially the same prior art? You know, that's a fair point, and they raised that in their blue brief repeatedly. It's always a fair point when it comes from the Court. That's true, Your Honor. And the agency actually considered the prior Ferenius decision, but that decision was based on a failure of proof. The examiner in the reexamination didn't make the same mistakes that Ferenius made in that particular case. The record is different. You don't know what it was based on, right? Do you think we have a final decision of this Court where you don't know what went on inside the heads of those three judges? Oh, no. I don't mean inside their heads, Your Honor. I'm talking about the record itself. Lichtenstein and Thompson were not before the district court, and there are no findings for that reason. What Ferenius relied upon... Again, the same person with the same prior art. I mean, that seems quite unfair and improper. We're not talking about that situation here, Your Honor. Because as I just mentioned, Lichtenstein and Thompson are two references that were not before the district court, and they provide an independent basis for this Court to affirm with respect to each of the... Couldn't they have been before the district court? Sure, they could have, the prior art. In other words, who was the opponent there? Fresenius? The parties were Fresenius and... Fresenius didn't present the full prior art and lost, and now it comes back, and has the Patent Office do it again? Well, Your Honor, the examiner found those particular references, and those are references that the district court did not make findings on. So even if this Court were to look at the Ferenius decision and question whether or not the reference there, which is CMS 08, should have been relied upon by the examiner, you can set that aside. Isn't there an obligation to tell the examiner during re-examination of the references that were before the courts in litigation of the same issue? I believe so, Your Honor. They have a duty to disclose. You said the examiner found them, but they weren't disclosed by the parties? You're talking about Lichtenstein, right? Lichtenstein was not part of the district court litigation. Lichtenstein was found by the examiners on an independent basis for reaching the obviousness. Exactly, Your Honor. And so those are two references that the examiner relied upon with respect to the same means plus function limitations that Baxter is arguing in their blue brief. Your argument is even if we agree with everything that Mr. Lee and Baxter argue with regard to CMS 08 handbook, and if we agree with all of the arguments, meaning it was decided by the court and therefore it's not within the matter that could be considered by the PTO because the PTO issued parallel independent grounds of rejection based on the new piece of prior art, that argument doesn't respond to that rejection. That's correct, Your Honor. And they had many opportunities in which to dispute the findings from the examiner, but they chose at every turn not to. That was a strategic decision on their part, but regardless of the motivation, there is substantial evidence to support the ultimate board decision. Can I ask you, though, about the CMS argument? Suppose, and I understand you might tell me it's not exactly the facts of this case, but just try to bear with me. Suppose that in the Fresenius case, the district court made a claim construction ruling, and the claim construction ruling was element A includes X and Y. Two different things, X and Y. It comes up on appeal to us, and we say no. Element A does not include X or Y. As a matter of law, we reverse element A. It's more narrow than that. It only includes X. It does not include Y. Would the PTO be free under the broadest reasonable construction standard in a re-exam to disregard the express claim construction by the federal circuit on the exact issue and say under the broadest reasonable construction, which is a different construction that the federal circuit uses, we think it includes X and Y, and then reject those claims. Right, and I understand the court's question and how it started off. That is not what we're dealing with here. I told you, remember in the beginning I said you're going to say it's not what we're dealing with here. Just go with it anyway, because one of the things you argue is, of course, there's a different standard for claim construction that applies in the PTO, and so I want to try to press you and understand exactly what your argument is with regard to that. Are you free to disregard that sort of clear claim construction? In this case, you don't even have to worry about the standard in the two different tribunals, and the reason is because we have Lichtenstein and Thompson. I know, but that's another argument about why this case is different from my hypothetical, but what I want to know is an answer to my hypothetical. Your Honor, I believe that this court has spoken to that issue in a number of different decisions, whether or not it's Swanson or in reconstruction or Ethicon. I believe that you'll find an answer to your question there, Your Honor. What is that answer? Tell me where it is, but not what it is. Yes, with respect to the broadest reasonable interpretation which the agency applies, which is a different type of analysis from this report. It ceases to be reasonable once we say it's not right, and you gave me great fodder for this. Your opinion in this case has a beautiful page in which you explain the basis for the broadest reasonable construction is entirely related to ensuring clarity for purposes of the public understanding the scope of the claim. So once the Federal Circuit has held what the scope of the claim is, how is the PTO acting reasonably when it says it's something different, and how is your office adding clarity when you do that? In fact, it seems to me you would be muddying the water, not clearing it by doing that. So I'm trying to figure out whether it's even reasonable for you to do that when we've spoken. Again, Your Honor, we're not dealing with the context of facts in this particular case. Well, it's controversial in this case because you really stress throughout your briefing the different standard that applies between the re-exam and the district court litigation. Sure, but we also pointed out that there are different references that would also allow for the court to infer. So do you think it would be reasonable for the PTO to disregard the clear claim construction and issue of law at the Federal Circuit and say the construction is the exact opposite of what we would? How would that add to the clarity? Your Honor, no. Whenever this court issues a decision, the agency takes careful consideration of that particular decision. When you say careful consideration, it makes it sound like you're free to disregard it after you've carefully considered it. No, I believe that this court has been clear. Are you bound by it? I believe that this court has been clear as to the policy reasons for the broadest reasonable construction when there is a re-examination. And the reason is because there's an opportunity for the patentee to amend its claims, which is not an opportunity that's afforded to them in district court. And that is a policy reason, which this court has said repeatedly, justifies the broadest reasonable construction in this context. Just looking at their Donaldson argument, they've argued that the examiner failed to do a proper Donaldson analysis with respect to the means plus function claims. However, again, they failed to raise that argument before the board. When you look at their briefs to the board... We should discuss the merits of the argument, and we'll figure out if we think it was waived. Your Honor, with respect to the CMS 08, there was a question with respect to the ultra-filtration pump. That was a finding made by the examiner. At no point did Baxter submit any form of evidence that disputed that particular point. They submitted a lot of evidence in this case. They submitted a number of declarations to try to establish secondary considerations with respect to whether or not you can combine a touchscreen with their hemodialysis machine. And the reason why they submitted a lot of evidence in that regard is because that was the whole focus of their re-examination. That was their strategy. That was the strategy of the trial, where the court even mentioned that the major issue seemed to be the obviousness to add the touchscreen to the hemodialysis. Did Baxter request the re-examination? No. There was a third-party request to do that. Okay. Would you say that was the focus? That was the focus of the issues at trial, is all I'm pointing out. And what Baxter did at trial was very similar to what they did here in the re-examination, which is focused on... You're talking about the district court trial? Yes. Yes, Your Honor. I thought you told us that the office is free to disregard whatever happens at trial. No, Your Honor. What I'm merely talking about was their strategy with respect to the arguments that they made before the PTO, which was plainly to establish that there was no obvious connection between adding a touchscreen to the hemodialysis. They did argue Donaldson with respect to one particular feature in Claim 28, but Claim 28 is not an issue here. But getting back to the ultrafiltration pump, Your Honor, they submitted a lot of evidence, again, with respect to secondary considerations, but they didn't establish, they didn't submit any evidence showing that an ultrafiltration pump could not be used to deliver dialysate, as the examiner found and the court ultimately affirmed. And in their reply, they pointed to a number of different documents in the record to support their particular allegation that an ultrafiltration pump could not actually be used the way that the examiner alleged. But when you look at 168-64, which is one of the documents which they submitted, the second full sentence in the upper right, which discusses ultrafiltration, says that a volumeric flow equalizer controls and balances dialysate to and from the dialyzer. So one of their own documents, which they submitted, really shows that the ultrafiltration pump can serve a number of purposes, which is contrary to what they did. We have a Rule 52, I guess it is, that applies to district courts, that their opinions have to have detailed findings of fact and conclusions of law. If we were to conclude that all the examiner and the board did was look at the means plus function language, decide the function, but identify no structure in the spec, but rather just point to prior art and say, see, there is a structure here for performing that function. Is that enough? Because we all know 112 requires you to have a structure. It's not enough that there just be a structure in the prior art to do the function. It has to be an equivalent structure or an identical structure to what's disclosed in the spec. So if the board skips over that step, it seems that it could be accused of applying the entirely wrong standard altogether. Your Honor, the agency has provided a remedy in that scenario, and that is that if the patentee believed that there was something wrong with the examiner's rejection, then he could appeal that issue to the board. And the rules expressly state that when there's a gaping hole, when there's a problem with the prima facie case, then you must raise those arguments in your brief. They didn't do that. They should have had to say, well, time out, the ultra-filtration is not equivalent to the structure disclosed in the specification for performing this. Whatever structure is in the prior art is not equivalent to. They have to do that. You don't have to affirmatively prove it is equivalent. They have to affirmatively prove it's not. Your Honor, the first step is for the examiner to issue its rejection. And if they have a problem with that, then they need to point it out. They can't wait until their blue brief to say, gotcha, examiner. You failed to do X, Y, and Z when this case was before you. The rules set out a standard. They failed to abide by that standard. And this Court has said, which is in accord with our rules, that when you fail to raise an argument before the Board, that argument is waived. What I keep hearing is you're saying never mind the merits. You don't get to the merits of the argument. And I still think, particularly in view of what's gone before, that it would be very helpful if you would respond to the merits of this argument on 112-6. I'm sorry. I didn't understand your question. You kept saying, well, they didn't raise it, so therefore too bad. I'd like to have the position of the office on their argument. Your Honor, I think that they needed to raise that issue based upon all the rules. You're saying you're not going to respond to the merits? I'll get to the merits. What was or wasn't? What structure was or wasn't? I'll get to the merits in just one moment, Your Honor. Okay, because you're over time, so please do get to it right away. Yes, Your Honor. It's our position that the examiner did a proper analysis that with respect to the arguments that were properly before it, the examiner did correctly apply a Donaldson type of analysis. I just want to briefly talk about the petition decision. It in no way waived what they were required to do, which is argue each and every one of the problems that they saw with examining the board's positions in their brief to the board, but they failed to do that. For that reason, this court should not consider each of those arguments. Okay. Any more questions for Mr. Johnson? Thank you, Mr. Johnson. Mr. Boone, you have your rebuttal time, and I suppose you may as well tell us about the waiver arguments since the office didn't really dispute your arguments on the merits. Let me say just three very quick points on waiver. One is I didn't get it out in response to the question, but on the means for delivering anticoagulant, at pages A, 9, 4, 5, 0 to 5, 1 of the hearing, you'll see that there actually was an exchange between Baxter's lawyer and the board about the means for delivering anticoagulant in the Donaldson context. The second point on waiver is that the soliciting limitation of Claim 27, which we haven't got to, is not subject to waiver. No one claims that there's any waiver, and under the board's, the solicitor's claim interpretation, the prior would not satisfy that limitation. And the third and last point on waiver is just this. I think this is the danger of making it up before you or on the fly. You've been referred to page 168 by the solicitor, saying that this shows that altered filtration can occur before or after the patient's been treated. This is page 168, and first, this is a brand new argument made today for the first time, but all you have to do is look at the diagram at the bottom, and you will see that U.S. altered filtration is after the patient's been treated. It has nothing to do with delivering dialysis, and that's the problem that is engendered by not following the correct procedural discipline. To go to Judge Moore's question about the correct claim interpretation, this case is different from what the solicitor is talking about for two reasons. The patent has expired, expired in April of 2011. This decision has relevance for one thing. It's the case that's on remand to the district court from this court's prior opinion. In that circumstance, I think you could fairly read this court's decision and say it's no longer the broadest possible interpretation. The patent's expired. It actually is what's the right interpretation. The second point is this. This court construed, page 1300 of the Fresenius opinion, the means for delivering anticoagulant, and I think I may have gotten crosswise. Judge Moore talked about two different limitations, but on the means for delivering coagulant, the phrasing of this court was the required stepper motor. Finally, it took me forever to figure out what you were talking about with the stepper motor because you kept saying you were still talking about the means for delivering, and I was just baffled about your argument. It's means for delivering the anticoagulant of Claim 30. I thought you were still on remand. My apologies. I didn't know you'd moved to the other claim. I'd moved to Claim 30. Now I understand your argument. The argument is simply this. This court construed that limitation. It said the stepper motor is required. The examiner did not disclose a stepper motor. The board did not disclose a stepper motor, and the only argument before you is stepper motors are inherent. Without a single citation to the record, it's not correct. The last point is this. Well, CMO 8 does disclose a stepper motor. The words are used in three different places in the handbook. But this was an argument made before this court before, but it's not the stepper motor used for delivering the anticoagulant. But see, this is part of the problem why you think we ought to be bound by that. So what our court said is the decision is supported by substantial evidence. It's a decision bloke. It's a fact question. What the prior art discloses. It's supported by substantial evidence. While it would seem unusual, it seems to me that two alternative decisions could both be supported by substantial evidence. Your Honor, true. But I think actually I would go. Doesn't it explain why you can't say a PTO should be bound by the decision below? Your Honor, and I'm not saying that they are bound by the decision. I'm saying two things. I'm saying that Chenery and the Supreme Court's decision say that if you have this type of conflict on the same prior art, there at least is an obligation to explain to the public and for the record and for the patent applicant why you're treating them differently. That's an important aspect. There ought to be an obligation to explain why you're making the decision. The second is this is not just a question of are there stepper motors here or there. This is a question of this court having decided that there is a disclosed structure for this particular function and having concluded that there was none in the same reference. That actually was correct, and the best indication to the court that it is correct is they don't give you any evidence that there is one. They just say it's inherent without a citation. Mr. Lee, is it correct that the district court and hence this court in the earlier decision did not have before it the same prior art that was applied here? Yes. It did not have all the same prior art. And I'd say two points on that, and then I'll yield the podium. It's not really correct. The solicitor used the phrase again, newly minted. It would be less than candid for me to say to the court that we would be in a different position if there had not been the petition for remand and the decision by the administrative law judge. If you go to the petition of remand at pages 9500 and 01, every single limitation I'm talking about today is specifically identified. The fact that this court addressed it, the fact that the function and structure was described, and the fact that no comparison was made for the two limitations is set out in detail at pages 9500 to 9501 for precisely these limitations. And the response is what you get from the chief administrative law judge. And at the end, I think the most important reason to get to the merits is that you cannot reconcile on these limitations the decision by the board with this court's decision. You certainly cannot reconcile it on the record that they've given to you. And we would suggest it would be wrong to reconcile it on the basis of arguments the solicitor makes for the first time on stepper motors being inherent, ultra-filtration pumps actually delivering rather than removing. That actually wouldn't be correct if we were sitting here on an appeal from the application. It certainly isn't correct when we're sitting here after this court rendered a decision in 2009. Thank you. Any more questions? No questions? Okay, thank you, Mr. Lee.